Would the attorneys identify themselves for the record, please? Yes. David Rose, Jeffrey Gabers, and Michael Goody on behalf of the plaintiff appellate. On behalf of the appellees, defendants, Gerald Rohr of the Law Firm of Schuyler, Roach & Chrisham. I'm joined here with my co-counsel, Frances Skinner-Lewis, of the Law Offices of F.K. Skinner-Lewis. Mr. Grosz, Mr. Rohr, if you heard me earlier, I indicated that each side would have approximately 15 minutes to argue, and from that, Mr. Grosz, you may save up some time for your rebuttal. And I would request to reserve time for rebuttal. All right. Thank you. You may begin. May it please the Court? Counsel? Your Honor, we are here today on an appeal from the trial court's order granting summary judgment in favor of the defendants out of a case involving a vehicular accident. The facts of the collision are fairly simple and straightforward. It happened on February 25, 2004, between the hours of 6 and 6.18 a.m., which was a period known as civil twilight, the 30-minute period before sunrise on that date. The accident occurred on westbound 159th Street near I-294 northbound ramp in Markham, Illinois. Joseph Sowa, who is the seatant of the plaintiff in this case, Bernadetta Sowa, struck the right rear tire of a CAT 936F front-end loader that was driven by Adolph Allen, who has since become deceased during the pendency of this suit, in the course of scope of his employment for Kennedy Construction Company. This front-end loader was in the left-hand lane and at a max speed. It can only travel about 26.8 miles per hour, which would be approximately 20 miles per hour below the posted speed limit. As a result of the accident, Joseph sustained a serious brain injury for which he had surgery and later the next day was ultimately declared brain dead and taken off life support. The question then becomes, why was this CAT 936F front-end loader on 159th Street? The defendant, Kennedy Construction Company, was working on a project on the south side of 159th Street west of I-294. Because it had certain concerns of vandalism, it decided to... Wasn't Judge Elrod only concerned about the MARS light, whether it was working or not? That's why he sent it up to us? Correct, Your Honor. There was concern by Judge Elrod about whether either party could present admissible evidence and carry any burden they may have about the MARS light. Specifically, there's an Illinois statute that requires this vehicle, when being driven on the highway at the time that lights are required, which would have included the time of this accident, to have a flashing amber beacon that is visible. No, but where's your expert? Where does he get the basis that the MARS light wasn't working? He gets the basis that the MARS light wasn't working based on a few different factors. Number one, that the MARS light was found to be unoperational within hours of the accident when a Kennedy mechanic went to inspect it. That's because the nut was loose. I'm sorry? That's just because the nut was loose. The wire wasn't dislocated from it. Correct, Your Honor. And the vehicle design expert that plaintiff has retained in this case, Jerry Wallingford, has testified that based upon the forces of the collision in this accident, as determined by the accident reconstructionist and his experience in vehicle design, those forces would be insufficient to cause that wire fitting to become loose. When I was preparing for this argument and I was reading the case, I asked myself the question, well, what if the nut was loose before the accident, but it was still connected? And so the light was on and everybody would say that the light was on, but then there was an accident and the nut that was already loose became a little bit looser and was now disconnected. And I found myself saying, well, couldn't that have happened? And then I asked myself, well, should you really be asking that question or is that a question for a jury? And that would be my position, Your Honor. There is conflicting evidence here at best about the operational nature of this light. And it's for a jury to take all of those facts and circumstances and evidence and then reach that question of fact to determine whether or not that light was operational. Here there is no evidence that the light was operational at the time of the collision or any time before. Well, what do you mean? No competent evidence because Mr. Sala is deceased and because Mr. Allen is deceased? Correct, Your Honor. So at the time of trial, because of the fact that any testimony that could be found about an inspection of the light is found in Mr. Allen's discovery deposition, the jury would never hear that testimony. Well, I don't know about that. Wasn't there testimony that Mr. Allen had to meet with someone from Kenny and they went over whether or not the lights were working and operational at the time? And doesn't that report of that person indicate that all the lights had been working? Wasn't that kind of a report that's kept in the normal course of business? Well, this is a report after the fact based upon, I guess we would say, the hearsay statement of Adolph Allen because the person filling out the report had no knowledge whatsoever either way. The report had to be prepared, didn't it? Wasn't it in the course of the normal business that there would be a report generated regarding what lights were working and not working because there had been a collision? It was a report that was prepared after the accident. I don't know if it was required to be prepared, but it was a report that was prepared. Just to be sure that I have this correct, but this report is a report of a conversation that this individual had with Allen in which Allen said the light was on before the accident. Correct. And your contention is? Our contention is that it would be impermissible hearsay because the person filling out the report, he acknowledges that he was not at the scene, didn't see the vehicles when they were there. Right. He's taking the report, though. I'm sorry? He's taking the report. Correct, Your Honor. He is taking the report, but he never inspected the vehicle until later in the day after the light had already been fixed. Well, I mean, the trial judge here said that the plaintiff couldn't prove that the light wasn't working and the defendant couldn't prove that the light was working. And so he said, so there's, what was he saying? There was no question of fact? No, he, essentially what he was saying is that he doesn't think that either party can carry their burden based upon the evidence that was before him, which we respectfully disputed based upon the evidence that we had. But didn't he earlier in his ruling say there were numerous questions of fact in this case?  And he did also, in summing up the case, what the trial court did in this instance is did find an evidentiary ruling that he was having a problem with and wanted the appellate court to decide whether or not evidence either by defendant or plaintiff, both or neither, would come in as to that light. The trial court did find genuine issues of material fact in the operation of the Caterpillar front-end loader, specifically whether or not it was reasonable for that to be driven in the fast lane of traffic at a speed that is approximately half the speed limit. The trial court also found that the claims of comparative negligence on the part of Joseph Sowa contained many genuine issues of material fact going to whether or not his speed was appropriate for the circumstances, whether or not he was having a proper lookout given the facts and the circumstances. So those are all separate theories, right? And the trial court found that there were questions of material fact with regard to the reasonableness of the cab being in a particular lane for a particular period of time and going at a particular speed. So how do you get the summary judgment if there is a question of fact as to these issues? It was all folded into the Mars Light issue, so that could be sent up to this court for purposes of the appeal. And the transcript even reflects the statements by Judge Elrod where he states, I don't want to send either party to trial in this case with a hand tied behind their back. Well, what I'd like to do is I'd like to step back on this Mars Light issue since that apparently is the core of this appeal. You can correct me if I'm wrong, each of you on that. But when you're standing in front of the trial court hearing on motion for summary judgment, and this was discussed several times in the transcript, whose burden is it at that time? Whose burden is it to show what the conditions of this Mars Light was? Wouldn't it be the movement? It would be the movement because we as the non-movement are entitled to have all reasonable inferences and all facts read in the most favorable manner to the plaintiff. But what were the inferences to be drawn in your favor when the police officer that responded to the scene basically said that I issued two tickets to the, you know, two tickets were issued to Joseph, none were issued to Alan. And the two tickets were what? The two tickets were, I believe, it was actually really just a catch-all ticket is what he actually ended up describing his ticket as in a deposition, which is where an accident has occurred, he didn't do any type of reconstruction to determine vehicle speed. So the statute would require, if that light wasn't working, and it's required, the Mars is required to be working for that tractor to be on that highway going 26 miles per hour at that time of twilight, the statute requires that light to be working. The statute also requires the triangular reflective sign to be working. Correct. And in this case, the officer testified that he issued only two citations and that there didn't appear to be any violations. Were there as far as Mr. Alan's operation of the Caterpillar? Well, we believe that there were violations that the officer did not issue any citations to him. And you would argue those are questions of fact? You're also asking that since no one said the Mars lights were on, that it can be inferred from everything that they weren't on, that it wasn't working. No one said it wasn't working. No one said that it was definitively not on, correct? Correct. Just that a number of people didn't notice whether it was on or not. Correct. The officers that responded and also the co-workers of Joseph who had actually driven by the scene. So from that, can it reasonably be inferred that it wasn't working and operational? Is that a reasonable inference? I believe that it is a reasonable inference, Your Honor, because we've got, again, it's a collection of circumstantial evidence which you have to look at the totality of the evidence and you can't just look at any specific single piece of evidence. Was there testimony from anyone to contradict the testimony that the vehicle that Joseph was driving was going 70 miles per hour? There was, Your Honor. All right, and what was that? That would be comparative negligence anyway, wouldn't it? What if speed was? It would be an issue of comparative negligence, excessive speed, but it would still be a question of whether or not that excessive speed, if to be believed, was the proximate cause of this accident, which again makes it an issue for the jury. In connection with this case, plaintiff retained an accident reconstructionist by the name of Dr. Mariusz Jaski, who did an analysis of the change in velocity of the Sowa vehicle. I'm not familiar with the different depositions and summaries. And he determined that based on the maximum speed of 26 point miles per hour and his change of velocity, that the vehicle's speed would have been within the posted speed limit. I'm still stuck on the, I'm going to have to bring you back again. I have a concern with regard to whose burden it is at the proceeding where this case was terminated, whose burden it was, and was summary judgment appropriate based on the fact that it was the movement's burden? And so it seems to me that there's two questions I have. If the trial court says the defendant can't prove that the light was on and it's the defendant's burden to prove that the light was on, how does the defendant win that hearing? That's number one. And number two, if we do have to look past that and say what evidence is there that the light was not on, when the trial court says, oh, and also when the trial court said neither side can prove the condition of this light, I assume you take issue with that statement that the plaintiff can't prove that this light was not on. And my question is, well, you have these expert witnesses that say, the one in particular that said that he did, how many studies, 36? 36. 36 studies to see whether or not this accident would dislodge this, well, there's a question of whether he tested the filament or whether he tested the connection. But that leads to the next question, and Ed, I'm sorry to go on, but that leads to the next question as well. Is it appropriate at that juncture to say there's no foundation for those opinions? Or is that a jury question? Go ahead, answer all that if you can, I'm sorry. Certainly, and for your first question, Your Honor, the way that we got here, and I would agree, I mean, we've taken an evidentiary issue that was of concern to the judge. And he made certain rulings on that evidentiary issue. And he did express on the record an intention to have this issue decided by this court so that we could save the time and expense of having a trial before ultimately that issue could be brought up on appeal by one of the parties. Is that usually what the mechanism of summary judgment is for? It is not, Your Honor. In this case, we would respectfully submit that the judge should have made his ruling and the parties abide by that ruling throughout the course of trial, try the case, based upon the genuine issues that the court found existed at that time. And if a dispute remained between the parties based upon the verdict that was reached by a jury, then that issue could be brought up on appeal. So we have an instance where there's a finding of a genuine issue of material facts, ultimately multiple genuine issues of material facts, but we've now… Well, I want to ask you about what Justice Palmer requested. Isn't it possible that the court, in looking at the expert opinions, could decide as a matter of law whether those expert opinions could even come in? Because let's say they were without foundation. I think we've got a procedural problem in what the court would have done in terms of a motion for summary judgment. In the motion for summary judgment, what the court… There was no actual testing of this particular light, correct? The testing the expert did was on other Mars lights where he simulated this wiring. Is that what he did? He simulated wiring and tested multiple different lights. The reason being is that after this wreck, Kennedy Construction ultimately replaced this light and didn't know what type of light it was that it replaced. So we were trying to cover the bases that we could based upon the information that was available to us. All right. Well, if let's say the judge excluded the expert testimony, wouldn't you argue there was still a question of material fact as to whether or not the light was working or not working based on the lay testimony that was presented? Absolutely. I mean, in this position, we believe that the lay testimony, the facts and circumstances all provide at least a genuine issue of material fact about whether or not that light was working and that the expert opinion is essentially the cherry on top, a further explanation from someone who has experience with these types of machines to deal with. All right. So what's the lay testimony that leads to that conclusion? The lay testimony would be all of the people that drove past the scene after the fact, and they're driving by when it's still dark, and although they recall seeing the headlights, they don't see the MARS light. Did they say they didn't see it or that they didn't recall? They did not recall. They did not recall. So how does that, like, I guess I would go back to that. How do you reasonably infer them that it wasn't on because they don't recall whether they saw it or not saw it? The way that you reasonably infer that is is that there's no credible evidence to the contrary. And again, you're looking at the totality of the circumstance, looking to we know as a matter of fact, undisputed fact, that it was not working when it was inspected. Later in the day. Later in the day, after it was moved on a paved highway and parked on a separate drive. Well, that then brings you from the lay testimony to the expert testimony because if your answer to the lay testimony is, well, yeah, that's fine, they all observed it after the accident. And you can't really make a determination after the accident as to whether or not the light was on before the accident. And then you say, well, yeah, but we've got these experts that say that the accident itself wouldn't have disconnected the light. Absolutely. And the other issue. So then the question is, I'm sorry, but the question is, you know, at that juncture in the summary judgment hearing, could the trial judge make the determination that that expert testimony is what?  Inadmissible? What? I think it would be premature at that point. What did the trial court do? When the trial court said you can't prove the light was off, did he make a determination that that expert testimony is without foundation or not worthy of belief? Not specific to the expert testimony. He dealt with the issue of carrying that burden about the light either being on or off as a generality, speaking as to the evidence, again, in its totality. There was not a decision made that Mr. Wallingford's testimony lacked foundation. And, again, this goes back to the general tenets of Illinois law, which is, I mean, if we're talking about a question of factual foundation, I mean, that goes to the weight of the testimony, not the admissibility of the testimony. So that that issue should have been dealt with in front of the jury in terms of cross-examination. And the other thing, I don't want to make sure that we get lost in this discussion of the MARS light, is the lack of an operating MARS light was just one claim that was asserted in terms of the negligence and the acts and omissions of the defendants which were approximate cause of this collision. And we would maintain that even without the MARS light claim, that there would still be a submissible claim that could be made on behalf of the plaintiff based upon the operation of this Caterpillar. That being whether or not it was reasonable to be driving in the fast lane of traffic at that speed. Also, the other claims that are submitted by the plaintiff here in terms of the failure to have advanced warning, be it warning signs, flashing signs, shadow vehicle, and also the lack of the underwrite are not dependent upon a finding that that MARS light was operational. Because still the issue would remain because of the time of this accident. Well, didn't Judge Elright basically say that as far as these duties outside the statutory realm, he was not going to allow that to go to the jury? That is correct. And I believe that he classified those claims as woulda, coulda, shoulda. And that it would have been nice if the Secretary of State had included those requirements in the rules of the road. But they're not there so that there's not an actionable claim. And we would respectfully disagree with that position on the basis that this is not a criminal or traffic proceeding. Yes, the Motor Vehicle Code can be looked to in terms of violations of that being evidence of negligence. But the mere fact that you have complied with the Motor Vehicle Code does not serve to exonerate you from everything else. And here we believe that there was a duty on the part of Kennedy Construction to undertake all of those additional safety precautions because of what they were doing. They didn't need to travel on 159th Street. They chose to do it for convenience. Well, isn't duty initially a question of law for the court to decide? Absolutely. It is a question for law to decide. And it's a question that you and this court would review de novo. And the issue of duty is not based solely on the Motor Vehicle Code and any violations, but it's what would a reasonable contractor or construction company do under the circumstances looking at foreseeability such as, and here it was reasonably foreseeable of a rear-end collision based upon the operation of this Caterpillar, the likelihood of serious injury. You can look to the rear of the Caterpillar in comparison to any other vehicle and realize that there's going to be significant issues if there is a rear-end collision, and also the burden on the defendant of placing that duty. And we believe that all those factors here weigh in favor of finding a duty on the part of the defendants. Now, the defendants at trial can come back and say, well, we did the minimum of what was required for us, but that's more of a defense to whether or not they breached that duty of reasonable care, not whether or not the duty existed in the first place. But you wrote it somewhat easier, though, with regard to the questions of the minimum speed and the driving in the left lane because of the existence of specific statutes with regard to those two issues, and the allegation that those two statutes were violated gives you an inference that there was a breach of duty. Isn't that correct? Correct, Your Honor, and the violation of that statute is going to be evidence of negligence, and it's therefore a jury's job to look at that evidence, to look at that violation, to determine whether or not that was a proximate cause or the approximate cause of this collision. And it's pretty clear, I think, from the findings that with regard to those issues, the driving in the left lane and the minimum speed, that the trial court, although summary judgment was granted in total, the trial court found that there were material issues of fact with regard to those two issues, right? That is correct, Your Honor. On all of the claims except for the MARS light, which was dealt on the evidentiary issue, and also the advanced warning underwriting. The signs, he said denied, denied, denied. But the issue of the actual operation of the Caterpillar, Judge Elrod did find genuine issues of material fact, but we've now gone past those to get the evidentiary on appeal. And I just want to make sure that it is clear, and there are multiple genuine issues of material fact that exist here in this case. There are at least five as it relates to the defendant's acts or omissions being a proximate cause, that being, as we've discussed, was it reasonable to be operating in the left-hand lane of traffic? The other general just question of fact, was the MARS light operating? Third, was it reasonable to be operating without any type of underwrite protection, which our experts have come to say there were commercially available devices. It's essentially an impact attenuator you may see in the back of DOT trucks going down the road that would serve to lessen the impact. And also, was it reasonable not to use any advance warning or to be on that road for any purpose? The issue that we have here, I think, in this case, and the biggest problem with the motion for summary judgment seems to be defendants' belief that if they prove that Joseph was negligent in any manner, then they are fully exonerated from anything that they did. And this ignores the fact that there can be more than one proximate cause and why generally the determination of proximate cause is a duty to be, is a decision to be made by a jury. And the case law is clear that the mere fact that he was the rear driver in the rear-end collision does not automatically create an inference of his negligence. Yes, and I think we understand that. I think you have some time for rebuttal. Is there anything else you wish to add at this time? No, thank you. All right. Mr. Brewer. Good morning again. Gerald Brewer on behalf of the defendants. If you'll please the Court. It's nice to be back before the First District again. It's certainly good to see you, Your Honor. Congratulations. To start with the beginning to answer Justice Palmer's first question, who is the initial burden? Of course, it's axiomatic that defendants have the initial burden going forward on a motion for summary judgment. To show, as I've set out in our brief, that there is an issue that must be resolved in their favor or there's an absence of evidence supporting the non-moving party's case. Once we have done that, the burden then shifts to the plaintiff to not prove their case at a motion for summary judgment but to bring forth some credible and tolerable evidence that would support their right to go to a jury. Mr. Brewer. Yes. This is really the question as far as I'm concerned. Didn't Judge Elrod essentially grant summary judgment on one issue only to you and then send the whole package here for us to look at that, the Mars Light? No. And let me address that very clearly. If you read the entire report of proceedings, of which I believe he did, I think there was a lot of argument back and forth in bantering as what I would call dicta, and Judge Elrod, who I will tell you, and I think you all know Judge Elrod, and I believe the plaintiff would say this in agreement. He and his law clerk staff, I mean, they looked at everything for a month, and he knew this case backwards and forwards. There was a lot of argument in what I would call dicta about what was going on. But then what he does in the record of the proceedings, in which I spell out on page 16 and 17 of my brief, he goes through point by point of the legal standards of what he's going through, okay? And I think in every single one of those is almost a verbatim from a quote. All right, well, then if you're going to say that he didn't do that, do you think based on this record it could be reasonably argued that there are no questions of fact about this particular tractor traveling at about 6, 8, 6, 10 a.m. in the morning in a time called twilight when the sun had not yet come up, and we have a tractor in the left lane of a four-lane highway traveling at about 26 miles per hour, whether or not that was reasonable at that time, and that the driver behind could see this tractor under the record here? You're saying as a matter of law there's no questions for a jury to decide whether those actions were reasonable? I think, Justice, you just hit the nail on the head. What Judge Elrod said is that to even get to those questions, we would have to determine whether someone can prove that the MARS light is on or off. Well, now, wait a minute. This isn't just about a MARS light. This is about a tractor traveling at a pretty slow rate of speed at a time when it's still a little bit dark, whether someone behind had enough visibility to be able to avoid hitting that tractor. And generally, whether a person driving at night on a straight highway should, by the use of ordinary care, see this object in front of it is generally and clearly a question of fact for the jury to decide in this case. Simply because there was a rear-end collision doesn't mean that driver of the car was negligent. I agree with you. But let me go back to what you were first starting in. There would be no evidence. First of all, the plaintiffs even agree in their pleadings here, in their brief, that we were legally entitled to be where we are. There is no pleading, and there is no evidence to show, even by the plaintiff's own admission, that this tractor is not a legal vehicle, of which Judge Elrod, I believe you recall, pointed out, that the only thing that comes up is if this MARS light is working, it's legal. If it's not, it's illegal. Everything else is dependent upon that, because we do have the other lights. We are a permissible vehicle on the road at that time, civil twilight. There's no question in the facts or the law that this vehicle can be on that road, in that lane, at civil twilight. Yes. I'm trying to answer your question. But if the tractor was there at 6 in the morning, that's what the evidence says. It's either 6 or 6-18. 6 in the morning, the tractor's not supposed to be on that road. It's supposed to be there at 6-03. 6-03 to 6-33 is civil twilight. The accident happens at 6-18 is what the evidence would show. The movement of the tractor to get the several hundred yards down the road from where it was being stored is only going to take a few minutes. That's the simple math of going from 0 to 26 miles to get to the accident site. There is no evidence, and I don't believe it's ever been brought up by the plaintiff, and I could be wrong, but I don't think I am. There's never been any argument that this tractor was operating during civil twilight. As long as we're in civil twilight and we've got the lights, we've got the Mars light, we've got the reflective triangle, we're legal. After that, it's all conversation. Wasn't there testimony, though, by an employee of Kenny that when the tractor was examined later in the day, the Mars light wasn't even working? Yes, and let me go through it. Can a finder of fact, is there a reasonable inference to be drawn from that testimony that the Mars light was not working? Judge Elrod says you can't prove that it wasn't working, and you can't prove that it was working. To me, that's a statement that there's a question of fact. And inferences may be drawn on inferences, but they must come to some conclusion that is probable, not just possible. And now we get into discussions of what we've put forth in our brief of Magitek, of Kelman, of Sturtz. You have to have some competent evidence to show that this is a probability, not just a possibility. Let me give sort of a silly analogy, but I think it sort of makes sense. Roar at 5'7 1⁄2 has a probability of getting to a basketball hoop against Justice Taylor, who's every bit of 6'4", but it's not probable. There is something in this record that says eight hours after an accident, as Justice Palmer pointed out and as you're alluding to, greening shows up and tightens the nut. But what's the evidence before that? I want to draw your attention here. Allen fills out his daily report. We can argue as to whether Allen's discovery deposition comes in. Is it admissible or not? Whether it's admissible or not. Let's assume for the sake of our discussion here, it's not. I've got a daily report, which is a business record kept in the normal course of business, and it records a fact, all the lights working fine. That's one piece of evidence, and that's reporting what Allen does prior to even driving out on the highway. Two, you've got the police officers from Markham show up, Muldrow, and then Knapp agrees with them. Muldrow says, I have the guy turn on all the lights to make sure everything is working. In the absence of it not working, I would have given him a ticket. I don't give him a ticket. Furthermore, he's asked to be ---- I thought there was conflicting testimony. It seems like I was reading two different depositions, but in your brief, you report that he says, if it wasn't working, I would have given a ticket. In their brief, they say that he had no recollection whether the light was operational or not. Let me go through his testimony. When he testifies in his deposition, he says, would I have given him a ticket? Yes, because that's what we do. I have the guy put on all of his lights. Was it working? Well, it must have been. It was on. Actually, I can give you a cite to the record. Muldrow, when asked, was it working, said, was it working before the accident? He actually says, yes, it must have been because it was working when I arrived. And if you bear with me, I can find it in my notes. If you each have interpretations of the same testimony, isn't that generally a question of fact? Well, I'm not interpreting the testimony. I'm telling you what the testimony was. And they have a different spin on it, I guess. They have a spin on it, but I don't think spin is what we're here for. No, we're not here for spin. And if I can refer you to the common law record at 1794 and 1795, where Officer Muldrow testifies, all the lights were working right after the accident because they were still on when he got there. So now you look at we've got Allen before the accident. We've got Muldrow coming right after the accident. We've got the three co-workers coming by, and I believe it was Justice McBride that pointed this out. Didn't they say there wasn't anything on it? They didn't remember if there was any yellow lights on. Actually, one of the co-workers says he sees flashing yellow lights. He sees yellow lights. So if we want to talk about inferences, the only yellow lights out there would have been the MARS light because the only other vehicles out there of which our expert actually says he points it out, emergency vehicles would have been red and blue. The only yellow light going on would have been the MARS light on top of the catapult. Then after that, and I believe one of you pointed this out. Didn't Judge Elrod specifically say in his ruling that there was a genuine issue of material fact as to whether Mr. Allen was being reasonable in operating the Caterpillar in the left-hand lane of 159th Street at the time of the collision? Did he say that? He talked about that, but that was not a holding because you have to- Didn't he say that at the beginning and didn't he also say that at the end? And then didn't he say, I'm going to give you summary judgment and I'm going to let the appellate court decide whether the MARS light should not come in or whether it was working or not working? Didn't he essentially do that? You're only reading half of what Judge Elrod said. Can we ignore what he said at the beginning? No, you have to read it in its totality. What Judge Elrod says and what his final conclusion was is that those things don't ever even come up because, as plaintiff's counsel pointed out, he said both of you would have one hand tied behind your back. That's not necessarily true. Just because the vehicle was operational and you're saying it had a right to be where it was, let's assume the MARS light was working. Let's assume there was a triangular reflector. A vehicle being operated at a subnormal speed may very well, and I'm quoting Griffin, create a hazard upon a highway designed and customarily used to carry fast-moving traffic, even though no vehicle may be approaching upon the road from the opposite direction as to prevent a passing of the slow-moving vehicle. Distances are deceptive at high speeds, and mental calculations of braking distances and stopping times are apt to prove faulty at such higher velocities. Then we have the time of day. It's called twilight. And yes, it's clear that this caterpillar had a right to be on the road, but I think your argument is boiling down to as long as they had a right to be on the road, they're entitled to summary judgment. As long as the light was operating, as long as they had on the triangular reflector, there's no other questions of fact. Whether it was reasonable to be doing this with this kind of light in this particular time of day with this other gentleman behind him, you're saying there's just no reasonable inferences that can be drawn that this wasn't an accident waiting to happen. I don't know what we get to after that, Justice. Let me be very clear. Now we get into do the plaintiffs have any competent evidence to ever get past a directed verdict. And the answer in this case, under these facts or circumstances, the answer as a matter of law is no. They can't, after the burden shift to them, motion for summary judgment, they have failed to and will never be able to come to this court or to a jury, go back to Elrod and come up with any competent evidence that shows not just possibilities, but probabilities. In that, that issue alone, this court may uphold Judge Elrod's granting of summary judgment. Well, when Judge Elrod said you can't prove that the light wasn't working and you can't prove that the light was working, to me he's saying that there's a question of fact. To me he's saying there is no question of fact, because what would the question be to the jury? Jury, trier of fact, based on this evidence, determine was the light on or was it not. But we have no facts, as I think Justice Palmer started out when we first started this. It's just possibilities of things like was it a little bit loose in the collision, made it all the way loose where there's no longer a wire connection. Was it, is it a possibility, certainly it's a possibility, that this tractor worked the rest of the day, and according to the daily log it worked eight and a half hours and was finally inspected eight hours after the accident itself. But was there vibrations over bumpy roads in the normal course of business? Did that loosen up the bolt? We have all these various possibilities, but what would, and I ask this rhetorically, what would be the question of fact to go to the jury? What evidence, competent evidence could a jury or a trier of fact look at that's been brought forth to say yay or nay? Well, there was testimony that it wasn't working eight hours later, and there was no testimony from anyone that the bars light was on, no one. Well. And there was testimony from the officer who said he doesn't know if it was on. There's testimony from other people that went to the scene that said, I don't know if it was on or not on. So, I mean, the question is, based on all of that, is there a reasonable inference to be drawn that perhaps the bars light, it's probable that the bars light was not on. No. It's just a possibility. Well, that brings us to the gorillas in the room, the expert witnesses, because I understand your point. Your point is that based on the fact that you've put upon them the burden of coming forward with some competent evidence to defeat the motion. So, come forward with some competent evidence to defeat the motion. And you say that if Judge Elrod says they can't prove it, then they can't get past it. But, okay, and if you discard all this other circumstantial evidence, what about the experts? Let's talk about the experts. Please. Because the experts say that that light was not on. A mere conclusion, unsupported by facts, is not relevant and will be excluded. And let me go through them. We talked about Wallingford and the filaments. Wallingford is the expert down in Texas. Wallingford did all these tests. None of them whatsoever are relevant. Nobody. Is that going to wait for admissibility? Did Judge Elrod determine that the experts, that there was no foundation? There's no foundation. That would go to admissibility, not wait. Did he conclude that in his summary judgment finding? I believe he went through and when he gave all of the bases and standards for what he was, why he was ruling, if you look, and it's all cited on the last three points, I'm sorry, the last two points on page 17 of my brief, which are direct quotes from Judge Elrod with cites to supporting case law. Experts cannot base opinions on what may have occurred or what the expert believed might have happened in a particular case. And did he later in his summary judgment finding say that I'm not, I wouldn't allow Dr. Hethington to testify that his opinion was without any foundation and therefore it would be excluded as a matter of law? I'm further finding that the retained expert, the second expert, Wallingford, yes. Did he make those findings in his summary judgment ruling? I believe he did, which then sparked this outcry of we would have to have a fry hearing, we would have to have a fry hearing. And, of course, fry hearing has nothing to do with this. We haven't gotten to trial. We're talking about was there some testing done of a novel scientific nature. We're talking about right here the admissibility and the credibility from a legal standpoint of so-called experts' conclusions without any basis thereof. And all of you have dealt with motions, pretrial motions, to bar, to strike, to exclude. You don't have fry hearings on that. You look, and all of you have been through this, and you say, does this guy pass muster? Does he have the basis to come up with this conclusion? And I believe, Judge Elrod, and I believe it's in their own testimony. If you read Wallingford and Jaworszewski and Hethington, they come up with these conclusions that it must not have been on. And under my questioning over and over again, why do you say that? Why do you say that? Why do you say that? And they basically come back and say, well, because the accident wouldn't have happened if it was on. That's no basis for an expert opinion. It just isn't a basis for an expert opinion. So you believe that Judge Elrod, in not only granting summary judgment, also made a finding as a matter of law that the expert opinions did not support any notion that the MARS light wasn't or wasn't working. Judge Elrod, I believe, as a matter of law, would not have been able to grant summary judgment had, as a matter of law, in his ruling and in his beliefs, had the expert opinions been at all credible and would have come in. Is it fair to the plaintiff, though, to essentially grant the motion to bar without actually having a hearing on a motion to bar before he makes that determination? Don't you have to have a motion to bar the evidence and then have a hearing and let them marshal their arguments in regard to the motion to bar the expert's opinion and have arguments about whether there's sufficient foundation and then have Judge Elrod say, I'm barring this witness, or at least I'm barring this opinion, and then have a hearing on motion for summary judgment. Is it fair to them? Isn't it kind of cart before the horse kind of thing? Judge, let's put the posture of the case. In motion for summary judgment, the defendants have come up with some evidence to show that either it would be in our favor or they have no credible evidence to move forward, and now the burden shifts to them. And they say, okay, here, we've got these experts. Yes. So at that point, Judge Elrod, because they're coming forward and saying, oh, the burden's on us, but now here's how we meet our burden through Judge Osteen, Hethington, and Longford, that's all part of the motion for summary judgment. That's what they put forward in their response and in their arguments to summary judgment. And Judge Elrod, as the trial judge, has to look at that and say, okay, you've proffered expert testimony to try to save your case. I'm not buying it as a matter of law because none of these guys came forward with an actual basis. You know, I just want to go to the actual transcript of the proceedings because I think there's a procedural problem here. I think what the trial judge did was he clearly held that there were genuine issues of material fact on certain issues, but he said on the Mars light, I can't, neither one of you can establish this issue one way or the other. So I'm going to give it to the appellate court because I don't want you to have to try this case without a ruling about the Mars light. That's what I think he did, and I'll explain to you why on page 832. He starts out by saying there's questions fit. He says there's a question of fact whether it was reasonable for this vehicle to be on the highway in the left-hand lane at that time of day. He says that there's a question of comparative fault. He says I'm not going to allow you to do that because no one can prove or disprove that under my ruling. I'm not going to grant the motion for summary judgment, and I'm going to allow you to have an appellate court say, Elrod, you're wrong. Earlier he says, he says you have to show this to the court, that there's a reasonable issue of material fact, that they were very, they were negligent, and that I would deny their motion for summary judgment and you would go to a jury. I've lost the page where he says, he specifically says that there are issues of fact on these, but I'm not going, since I can't determine the issue of the Mars light, and you're both going to be trying the case with one hand behind your back, I'm going to give you summary judgment, Mr. Rohr, and let the appellate court decide whether or not the issue of the Mars light should go to the jury. He says later on, on 832, there is an issue on whether or not there was a slow-moving vehicle in a left-turn lane, and that issue can go to a jury. That's what I was talking about. There is an issue of comparative negligence. Should the slow-moving vehicle have been in the left-hand lane, should the slow-moving vehicle have seen it and avoided it, which it could have done, that issue will be there. It's beyond me how that issue will be there if you dismiss the case. Justice, if we read the whole thing, and I think what Judge O'Rourke is doing, is saying we never get to those issues. Those issues can never actually be resolved, even if they are issues, because the Mars light and the conspicuity of it can never be resolved. So the issue as to why and what caused Sowa to slam into the back of his cat will never be resolved, and we could never get to any of those things, because neither one of you fellows can tell me with proof positive that the light was on or off. And I'd also like to get beyond sort of what Judge O'Rourke says. It's clear from this transcript that he made this ruling and both sides are standing there and both sides are saying, you know, we're not really sure what hit which has happened, Judge. Could you clarify? Because if you go on, with all due respect, if you go on, there's a point where you say, well, I may be a little bit confused on the ruling. So you're granting a part, denying a part, and then Ms. Skinner-Lewis says no, and then you say, I agree with Mr. Brose, I think we're both a little unclear as to what your ruling is. And he says, and I think this is important, he says, well, when Mr. Langdon says, well, how do we not get to a jury if they're illegal in that lane? This is being in the left lane. How do we not get to a jury if they're illegal in that lane, even with the MARS light on? And the judge says, because I want to determine that. I want to make clear whether the MARS light was on or not. So it's pretty clear, I think, that there's these other issues, and I want to get back to something you said earlier. There's these other issues. There's the left lane issue and the speed, the minimum speed issue. I think it's pretty clear that the judge said, yeah, well, let's clear up this MARS light issue first, and then we'll see what happens. The problem is, procedurally, that didn't happen, I think, in the appropriate way, because if that's the case, you don't grant summary judgment on the whole thing. You don't grant summary judgment on the whole case. And two, well, I'm going to let you go ahead and respond, because I want to ask you about getting to the jury on the minimum speed in the left-hand lane also. Go ahead. Judge Justice, you're reading and saying, well, you guys were confused, except what was the ultimate answer from Judge Elrod? He said, don't be confused, and I don't have the exact quote in front of me. He says, I'm granting summary judgment on the whole thing, and he enters an order stating such. So when we come to a procedural issue, the entire motion for summary judgment is before this court and it's before this court de novo. You three need to look at this and can look at this. I would suggest that the record before Judge Elrod and the record before this court supports our position that under no circumstances, Mars light or not, could the plaintiff ever prove their case to a probability? There are so many other possibilities, of which we address in our brief and which we addressed before Judge Elrod. Was the guy so blind from his diabetes? Was he having a heart attack? Was he falling asleep? Was he spilling his coffee? Wasn't there medical testimony that he died from a brain injury right after the accident? I mean, there was at least an inference to be drawn from that, that he died as a result of the collision. There was no testimony that he had a diabetic attack or that he had a heart attack, but there was medical testimony that he died as a result of a collision and that he injured his head. May I correct that? Judge Cotillia, Dr. Cotillia, who is a treating physician at the hospital, testified that he lived, the accident happened at 6 o'clock in the morning, 2 o'clock the next morning, he's pulled off the bike and he dies. And, of course, he died of a brain injury. Dr. Cotillia's, it's in the brief, testifies that there was evidence from the scripts while he was treating him that at the time of the accident there may be evidence to support that he was having a myocardial infarction at the time of the accident. Yes, there may be. There may be. Is that a question of fact or is that a matter of law? The court decides. There are so many possibilities, and this is why I think we said it pretty clearly in our appellate brief and before the trial court. No one will ever know, and can we ever know, because Soa's dead and there was no eyewitnesses other than Allen and he was looking forward and now he's dead, to say what actually caused Soa to smash into the back of his cab. In none of the circumstantial evidence, the only circumstantial evidence is there was an accident. But the existence of an accident will not lead to an inference of negligence. We cite all the cases starting with Magitek, starting with Kelman, starting with Stuart's, all of those cases. What I think we're going to have to do is go through the, I mean we have a good portion of the transcript, but I think we really have to go through the transcript and see and review the expert's testimony very carefully to determine whether the trial judge was in effect doing what you're saying and he was finding that everything was out. The experts were out, there's no testimony to support any of their theories and that as a matter of law there's absolutely no question of material fact about whether this vehicle being in the left-hand lane at this time of day with the lighting as it was, traveling at 26.5 miles per hour, whether it was reasonable or not. And if he said that that's gone, there's no testimony to support any of their theories and there's no competent testimony. I mean this isn't about whether Judge Elright said these are possibilities. I mean he did say that they're possibilities but not probabilities. He said everything was circumstantial. And so, but is that really, is that how we're going to review this? We look at it de novo and we determine whether there's some testimony that raises a question of material fact about whether the vehicle was reasonably operating on the highway with the MARS light, without a MARS light, with the triangular reflector or not. Or did Judge Elright use the summary judgment vehicle to basically put in our lap a question that he should have decided and then let you go to trial? May I briefly respond? You're talking about was it reasonable for that vehicle to be on the road regardless of the headlight or the MARS light? Because there are cases that say going too slow can actually cause a collision. I would suggest, though, that that's the wrong thing to be looking at. The right thing to be looking at is was it, what was the proximate cause? And plaintiff cannot, from a legal standpoint in this case, cannot prove proximate cause. Doesn't have the horses. Now, Justice DeRoar, later in this, Judge Elright also concedes that this is not a condition. The question is, was it a cause? And he said that's an issue there. He said that was an issue, too. He said it was an issue. He said it was, I can't say this was a condition rather than a cause. He says that in his findings. So, I mean, it seems to me he said there were multiple issues. But because I can't resolve this one issue, I'm going to let the appellate court do it. So you don't have to try the case without a ruling in advance from me, which I can't decide. In the record before this court, I somewhat humbly and respectfully disagree with the reading of what Judge Elright was saying. That being said, the record before this court is there is no competent evidence either from a circumstantial and eyewitness or an expert point of view that would allow them to get past, if this were to go to trial, to get past the director. And if that's the case as a matter of law, summary judgment is appropriate. And I agree with you. Any further questions? I very much appreciate the opportunity to address you. Thank you. Mr. Brose. Very briefly. To address the issue of the experts, I do not recall any discussion on the record by Judge Elright where he discussed any of the specific testimony of the experts. I've not been able to find citation to that in any of the briefs or my brief review of that portion attached to the appendix. So I don't think that that was considered. But even if it was going to be considered in a wholesale fashion with the motion for summary judgment, we do maintain that there was a procedural error there. We did not have the opportunity to review a motion to bar, to respond to that motion to bar, to provide affidavits of our expert, to put on our expert to provide testimony, to make any offer of proof to establish what that testimony would be. What is the testimony, Mr. Brose? What is going to be the testimony, you two dead men, what is going to be the testimony that's going to go to a jury that's going to say that Mr. Allen couldn't see this vehicle in front of him? Who's going to say that? That would be a connection of different people. I mean, we have the issue of the MARS light, which is going to decrease the conspicuity of that Cat 936F loader. We've also got no additional warning signs, flashing bars, nothing to advise us. So we have the issue of conspicuity. Well, how did the, I mean, where do you have an expert even saying that I tested this and I know. Didn't both of them concede that they didn't know whether or not the MARS light was operating or not operating and their opinions were based on their opinion that if it wasn't working, then I can say this. I believe it was all that they did say that they could say to a reasonable degree of engineering certainty that it was not working based upon the entirety of their analysis. But what was that based on? It was based upon a review of the accident information. It was reviewed based upon the vehicle engineer's knowledge and experience. The testing showed it wouldn't even fail a filament. Didn't they have to pull something from somewhere to say that someone said the MARS light wasn't working? I don't believe so, Your Honor, because we can refer to circumstantial evidence for them to rely upon. But what is the circumstantial evidence that the MARS light wasn't working? Again, the circumstantial evidence is that it was not working after the fact. Eight hours later. Also that we've got the evidence of the co-workers who drive by who don't see it. There's a picture included in the appendix of the Caterpillar at the scene and its headlights are on and the MARS light is not operating. Isn't that a flashing light? It is a flashing light, Your Honor. If it's a flashing light, then it isn't always on. It's flashing. Correct, it would always be on, but whether or not it would be picked up by the photo. But we have multiple photos and in none of the photos... Did anybody testify, though, that they saw that it wasn't flashing? No, it was just a matter of not recalling one way or the other. The issue also that I want to address here is there was a lot of throwing around of the term of we were legally on the road, we were legal. And again, I just want to emphasize the point of being legal has multiple definitions. Were they within the motor vehicle code? Only if they had that operational MARS light, but that still does not exonerate them from negligence. Well, I don't know, I think you do have a problem with the experts testifying about what caused the accident. Who is going to say at all what caused Mr. Allen to go into that vehicle? And why? What will it be based on? What will that testimony be based on? The expert has to tie it up to something. And unfortunately, the driver of the tractor is dead. And unfortunately, Mr. Allen, obviously, I'm sorry, Mr. Sawa died as a result of the accident. So where is this testimony going to come from for the expert to base his or her opinion on? Well, again, we've got the issue of the MARS light, but we've also got the slow operation of the vehicle. And there's Illinois law that recognizes that a slow operating vehicle does create a hazard. Who's going to say it was a hazard for Mr. Sawa that night? Dr. Ken Hethington will say that because he will talk about how the slow moving nature of it violated Mr. Sawa's driver expectancies and served to increase his perception and reaction time. And how is he going to do that based on what? His observations of something? Based upon his observations of how the accident... I'm not sure what he's basing his... How does the finding that Mr. Sawa attempted to avoid the accident by the angle of his car at the time of impact impact your argument? Well, it shows... Well, that's what you should have said when I asked you the question. It was the opinion of our accident reconstructionist as agreed by one of the defense's experts that it showed the angulation, we don't have a direct front or rear impact, that it showed he was trying to avoid. Then it becomes a jury question to decide whether his actions should have happened sooner or whether they were appropriate under the circumstances. The only other issue I want to address in 15 seconds is we have two different arguments going here. They want to say we have to establish everything to a certainty, which I would suggest that that is not the requirement. But defendants, they want to be able to establish the proximate cause being solely on Mr. Sawa based on possibility. He said, quote, there are so many possibilities as to how this happened and no one will ever know and we can never know. It's their burden to prove that Joseph Sawa was negligent in his operation of the vehicle to carry their burden on compared to false and based upon everything they said they cannot do. Did Judge Allright ever say that you don't have proximate cause? That wasn't really the basis of his ruling, was it? No, Your Honor. On that specific issue or on the issue generally? Generally, no. I mean, the issue still remained the issue of the Mars Light. Thank you. Thank you both and the case was well argued and well briefed and we will take it under advisory. Thank you.